lml/hrk

#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| **STEVEN RAY PETERMAN,** | ) ) ) |  |
| Petitioner, | ) ) |  |
| v. | ) ) | Case No. 05-3441-JAR |
| **DAVID McKUNE, Warden,** **Lansing Correctional Facility,** *et al.* | ) ) ) ) |  |
| Respondents. | ) ) ) |  |

#### MEMORANDUM ORDER AND OPINION DENYING
#### MOTION UNDER 28 U.S.C. § 2254

This matter comes before the Court on Steven Ray Peterman's Petition for Writ of Habeas Corpus (Doc. 1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254. Having carefully considered the parties' submissions, the Court is prepared to rule. For the reasons stated below, the Court denies petitioner's request for federal habeas relief.

**I.      Background**

On September 7, 2001, petitioner and Donna Davis met at a nightclub in Hutchinson, Kansas. Petitioner discussed with Davis the possibility of making money from pornography on the internet. Petitioner told Davis that he wanted to take pornographic pictures of little girls and asked Davis if she could provide him with young girls, promising that if she helped him, they would make a lot of money. Davis was offended by petitioner's statements, but continued the conversation to determine if petitioner was serious. She agreed to provide him with young girls, and gave him her pager number so that he could contact her later.

Two weeks later, petitioner paged Davis and asked if she had any little girls for him to have sex with and photograph that night. Davis lied and told him that she had a ten-year-old girl with her. When petitioner asked what the girl looked like, Davis described her nine-year-old niece who has having a birthday party that day. Petitioner asked to come to Davis's house, but Davis explained that they could not get together with the child until after the party, and directed him to call back in thirty minutes. During that time, Davis called the police and informed them of the situation. The officer instructed her to postpone the meeting until the next day so that they could gather evidence, but Davis informed the officer that petitioner insisted on doing it that night. The officer advised Davis to give petitioner her address.

When petitioner called back, Davis gave him directions to her brother's apartment where she was located. Petitioner asked if the little girl was there, and Davis stated that she was. When she got off the phone with petitioner, Davis called the police to inform them that petitioner was planning to arrive at her brother's apartment. While she was still on the phone, petitioner drove up and parked next to the apartment. At that moment, Davis's niece and other children were playing outside, and Davis's sister-in-law immediately drew them inside. Davis hung up the phone with the police and went outside to join petitioner in his truck while her brother called the police and kept them informed of the situation.

While they were sitting in the truck, petitioner asked Davis about the little girl and said that he wanted to take the girl then. Davis explained that she could not interrupt the birthday party because people would ask questions. Instead, she convinced petitioner to wait until after the birthday party and promised to bring the little girl to meet petitioner at a motel.

As they sat in the truck, petitioner described in detail what he wanted to do with the little

girl, stating that he planned to drug the girl, penetrate her vagina with a vibrator, and finally have sex with her. Petitioner opened his briefcase and showed Davis various dildos, vibrators, sex creams, and condoms, as well as photographs of naked little girls with whom he claimed to have had sex. While sitting in the truck, Davis held the pictures at an angle so her brother could see them through the apartment window and describe what he saw to the police over the phone.

As Davis and petitioner sat in the truck, two police cars arrived and blocked petitioner's truck in front and behind. Petitioner placed his briefcase in the backseat and threw a jacket over it. Davis informed the police that there were pictures in the briefcase. The police directed petitioner out of the truck and advised him of his *Miranda* rights. Petitioner consented to a search of his truck, but not the briefcase. Upon further questioning, he told police that there were pictures in the briefcase that could get him in trouble. Petitioner later admitted that he had obtained photographs of the young children from the internet, and consented to a search of his briefcase. When police searched petitioner's truck, they found a paper sack containing an empty case for a dildo, a receipt showing that a dildo had been purchased that afternoon, a flyer for kids night at Skateland Center, and a black briefcase. In the briefcase, the police found pornographic pictures of children, a pair of black women's panties, vibrators, dildos, a bottle containing "Climax Personal Lubricant," a bottle containing an unidentified liquid, bottles of massage oil, a container of ginseng powder, two gold balls, a set of metal clips with a chain, condoms, skin care lotion, "China Shrink Cream," "Hard-on Cream," a jar of spermicidal lubricant, and a bottle of liquid "Spanish Fly." Petitioner told police that he had planned to take photographs of himself having sex with the child and would have used the items in his briefcase on the child.

At trial, the jury found petitioner guilty of attempted rape, solicitation to commit rape,

and solicitation to commit sexual exploitation of a child.  Petitioner was sentenced to 144 months in prison.  Petitioner appealed all three convictions, claiming insufficiency of the evidence, multiplicity, and erroneous refusal to suppress evidence.  The Kansas Court of Appeals reversed petitioner's conviction of attempted rape and affirmed all other charges.[1]  Both the State of Kansas and petitioner filed petitions for review with the Kansas Supreme Court.[2]  The court denied petitioner's petition for review, granted the State's petition, and reversed the Court of Appeals on the charge of attempted rape.[3]  This request for federal habeas relief followed.

## II.    Standard of Review

Because petitioner "filed his habeas petition after April 24, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this appeal.[4]  The AEDPA "circumscribes a federal habeas court's review of a state court decision."[5]  Under 28 U.S.C. § 2254(d), a federal court may not grant habeas relief on any claim adjudicated in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[6]

---

[1]*State v. Peterman*, No. 90120, 2004 WL 1878301, at *8 (Kan. Ct. App. Dec. 15, 2004).

[2]*State v. Peterman*, 118 P.3d 1267, 1270 (Kan. 2005).

[3]*Id.* at 1273.

[4]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citations omitted).

[5]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quotations omitted).

[6]28 U.S.C. § 2254(d).

In *Williams v. Taylor*,[7] the Supreme Court discussed the § 2254(d) clauses:

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts.[8]

"Under the 'unreasonable application' clause, the Court in *Williams* stressed that the relevant inquiry is not whether the state court's application of federal law was incorrect, but whether it was 'objectively unreasonable.'"[9]

The court presumes "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence."[10]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[11]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[12]  "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard of evaluating state-court rulings."[13]

---

[7]529 U.S. 362 (2000).

[8]*Id.* at 412-13.

[9]*Anderson*, 327 F.3d at 1153 (citing *Williams*, 529 U.S. at 409).

[10]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing § 2254(e)(1); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002)).

[11]*Id.* (citing *Herrera v. Lemaster*, 225 F.3d 1176, 1178-79 (10th Cir. 2000)).

[12]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[13]*Anderson*, 327 F.3d at 1152.

**III.     Analysis**

Petitioner filed a petition for habeas relief on November 22, 2005.[14] On March 13, 2006, the State filed an Answer and Return.[15] Although petitioner filed a Traverse on August 14, 2006, the Court granted the State's Motion to Strike Traverse because the traverse was really a memorandum of law that should have been filed with his petition.[16] Although the Court gave petitioner additional time to file a proper traverse, his counsel opted not to do so. Therefore, the Court will evaluate petitioner's claims based on his petition for habeas relief and the State's Answer and Return. In his petition, petitioner raises three constitutional violations: (1) insufficiency of the evidence to support the conviction of attempted rape; (2) insufficiency of the evidence to support the conviction of solicitation to commit rape; and (3) failure to suppress evidence seized in a warrantless search of petitioner's vehicle. The Court will review each issue in turn.

**A.     Insufficient Evidence of Attempted Rape**

Petitioner challenges the Kansas Supreme Court's determination on direct appeal that the prosecution produced sufficient evidence to sustain a conviction on the charge of attempted rape. "[A] state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim."[17] In evaluating sufficiency of the

---

[14](Doc. 1.)

[15](Doc. 9.)

[16](Doc. 24.)

[17]*Jackson v. Virginia*, 443 U.S. 307, 321 (1979).

6

evidence claims, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[18]  When the record supports conflicting inferences, the court must presume that the jury resolved those inferences in the government's favor.[19]

The Tenth Circuit has not resolved whether district courts should review a sufficiency of the evidence issue as a legal determination under 28 U.S.C. § 2254(d)(1) or a factual finding under § 2254(d)(2) and (e)(1).[20]  The court has explained this distinction as follows:

> If sufficiency of the evidence is treated as a legal claim, under § 2254(d)(1), the court must evaluate whether the [state court] unreasonably applied the standard from *Jackson*.  If sufficiency of the evidence is treated as a factual finding then the analysis falls under § 2254(d)(2) which asks whether the [state court's] decision was an unreasonable determination of the facts.[21]

Petitioner does not dispute factual conclusions but only the sufficiency of the conclusions to support the jury's verdict.  Thus, the State argues, the question before the Court is whether the state court determination that sufficient evidence existed was contrary to or an unreasonable application of *Jackson*.  The Court does not decide which standard applies here because petitioner's claim fails under either standard.[22]

Under Kansas law, rape is defined as "sexual intercourse with a child who is under 14

---

[18]*Id.* at 318-19 (internal citations omitted).

[19]*Turrentine v. Mullin*, 390 F.3d 1181, 1197 (10th Cir. 2004) (citing *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996)).

[20]*Dockins v. Hines*, 374 F.3d 935, 939 (10th Cir. 2004); *Fields v. Gibson*, 277 F.3d 1203, 1220 (10th Cir. 2002); *Moore v. Gibson*, 195 F.3d 1152, 1176-77 (10th Cir. 1999).

[21]*Webber v. Scott*, 390 F.3d 1169, 1178 (10th Cir. 2004).

[22]*See, e.g., Romano v. Gibson*, 239 F.3d 1156, 1165 n.2 (10th Cir. 2001); *Hale v. Gibson*, 227 F.3d 1298, 1335 n.17 (10th Cir. 2000); *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir. 2000); *Moore*, 195 F.3d at 1176-77.

years of age."[23] Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse."[24] Attempt is defined as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime."[25] The determination of the existence of an "overt act" is a function of the jury.[26] Thus, in order to convict petitioner, the state was required to prove that petitioner (1) performed an overt act towards penetrating the sexual organ of a female child under the age of 14; (2) performed that act with the intent to penetrate the sexual organ of a female child under the age of 14; and (3) failed to penetrate the sexual organ of a female child under the age of 14.[27] As the second two elements are not disputed, petitioner's argument focuses on whether there was sufficient evidence of an overt act.

On appeal, the Kansas Supreme Court applied a standard similar to *Jackson*,[28] then concluded that a rational factfinder could find beyond a reasonable doubt that petitioner was guilty of attempted rape.[29] The court found that it can be enough for a defendant to arrive at the scene where the crime is to occur, depending on the facts and reasonable inferences a jury may

---

[23] K.S.A. § 21-3502(a)(2).

[24] *Id.* § 21-3501(1).

[25] *Id.* § 21-3301(a).

[26] *State v. Chism*, 759 P.2d at 110 (1988).

[27] *State v. Peterman*, 118 P.3d 1267, 1270 (Kan. 2005).

[28] *Id.* ("the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.") (citation omitted).

[29] *Id.* at 1273.

draw from those facts.[30] The court found that although petitioner did not come in close physical proximity with a child, his intent was to have sexual intercourse with a child.[31] The court determined that the act of driving to a location to pick up a child for purposes of sexual intercourse was an overt act beyond mere preparation because petitioner went as far as he could toward completing his criminal intentions prior to discovering that the child victim was fictional.[32] After an independent review of the record and viewing the evidence in the light most favorable to the prosecution, it is clear to this Court that a rational fact finder could have found petitioner committed an overt act toward his attempt to have sexual intercourse with a child based on the evidence presented. In addition, the Kansas Supreme Court's rejection of petitioner's claim was not an unreasonable determination of the facts.

Petitioner argues, however, that the young girl Davis described to him never existed, and his action of meeting Davis did not constitute an overt act to commit rape. However, K.S.A. § 21-3301(b) eliminates factual and legal impossibility as defenses to an attempt charge.[33] Moreover, the record indicates there is evidence that petitioner could have associated an actual child with the fictional child Davis described to him, and the niece was outside when petitioner drove by Davis's brother apartment. The evidence at trial shows that, after asking Davis if she could find a young girl for him that night, petitioner drove to meet Davis in order to pick up a

---

[30]*Id.* at 1271.

[31]*Id.* at 1273.

[32]*Id.*

[33]*See State v. Jones*, 21 P.3d 569, 572 (Kan. 2001) (noting statute in upholding defendant's conviction of attempted indecent liberties with a fictional 14-year-old girl created by a Wichita police officer in response to defendant's internet personal advertisement).

child for the purpose of having sex.  When petitioner arrived at the apartment, he had packed a briefcase full of various sexual instruments and proceeded to describe in detail to Davis what sexual activities he intended to do to the child, including penetration with a vibrator and intercourse.  Thus, the evidence was sufficient for a rational jury to find that when petitioner drove to meet Davis, he committed an overt act towards the commission of rape.

Petitioner also argues that because he was never in close proximity to the child, he could not have committed an overt act towards rape.  Instead, petitioner argues, since he planned to have intercourse with the child at a motel and not at Davis's apartment, his meeting with Davis was merely preparation for the crime.  In Kansas, it may be enough for an attempt conviction for a defendant to arrive at the place where the crime is to occur.[34]  Contrary to petitioner's suggestion, the testimony was sufficient for a rational trier of fact to find that petitioner had gone beyond mere preparation and committed an overt act.  Davis testified at trial that she told police that petitioner was insisting on having intercourse with the girl the night he went to her apartment.  Whether petitioner planned to have intercourse with the girl at Davis's apartment or at a motel is unclear.  Nevertheless, petitioner's desire to have sexual intercourse with the girl as soon as possible was unmistakable.  When "faced with a record of historical facts that supports conflicting inferences[, the court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."[35]  Furthermore, the prosecution is not required "to rule out every

---

[34]*State v. Garner*, 699 P.2d 468, 476-78 (1985).

[35]*Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997) (quoting *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996)) (internal citations and quotations omitted).

hypothesis except that of guilt beyond a reasonable doubt."[36]  Although petitioner did not come in close physical proximity with a child, his intent was to have sexual intercourse with a child the night he paged Davis.  Therefore, in viewing the evidence in the light most favorable to the prosecution, a rational jury could have found that petitioner committed an overt act beyond mere preparation when he drove to meet Davis to pick up a child for the purposes of having sexual intercourse with her.

Finally, the Court notes that petitioner argues, in effect, that the Kansas Supreme Court wrongly decided the scope and definition of "overt act."  To the extent petitioner objects to the Kansas Supreme Court's interpretation of its own state laws, however, that is not for this Court to correct.[37]  "Habeas jurisdiction does not empower federal courts to correct errors of state law."[38]  Rather, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[39]  Instead, after reviewing the evidence in the light most favorable to the prosecution, this Court finds that petitioner is not entitled to habeas relief on this issue because the Kansas Supreme Court's

---

[36] *Jackson v. Virginia*,  443 U.S. 307, 326 (1979).

[37] While discussing petitioner's case, the Kansas Supreme Court provided the following explanation of "overt act" under Kansas law: "[t]he intent to commit the crime of rape rather than the possibility of success determines whether the defendant's act constitutes the crime of attempt. . . . It may be enough for the defendant to arrive at the scene where the crime is to occur."  *State v. Peterman*, 118 P.3d at 1271.

[38] *Kaiser v. Hannigan*, Case No. CIV. 97-3239-DES, 1999 WL 1289470, at *4 (D. Kan. Dec. 16, 1999) (citing 28 U.S.C. § 2254(a)).

[39] *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citations omitted).  One Kansas judge noted that *Peterman* marked a shift in the line between a preparatory act and an overt act, thereby giving "overt act" a much broader scope.  *See State v. Ladd*, No. 94,383, 2006 WL 1379645, at *3-5 (Kan. Ct. App. May 19, 2006) (per curiam) (Greene, J., concurring).  Whether this expansion in the definition of an overt act is appropriate in light of Kansas precedent is not for this Court to decide when reviewing a petition for habeas relief: "Federal courts are bound by a state court's interpretation of a state statute unless it is inconsistent with fundamental principles of justice."  *Smith v. Atkins*, 565 F. Supp. 721, 740 (D. Kan. 1983).

rejection of his claim was not contrary to or an unreasonable application of *Jackson*, nor was it an unreasonable determination of the facts. Petitioner's request for relief is denied.

### B. Insufficient Evidence of Solicitation to Commit Rape

The State argues that petitioner's second claim for relief should not be addressed because he has failed to exhaust his state court remedies as required under 28 U.S.C. § 2254(b) and (c). "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."[40] In this case, petitioner appealed to the Court of Appeals his conviction of solicitation to commit sexual exploitation of a child on sufficiency of the evidence grounds.[41] He also challenged his conviction for solicitation to commit rape on multiplicity grounds, arguing that solicitation to commit sexual exploitation of a child is either a lesser included offense of solicitation to commit rape or is identical to that offense.[42] When the Court of Appeals upheld both convictions,[43] he filed a petition for review with the Kansas Supreme Court.[44] Although the Kansas Supreme Court granted the State's petition and reviewed the question of insufficiency of the evidence of attempted rape, the court denied petitioner's petition for review.[45]

Petitioner now argues in favor of habeas relief because there was insufficient evidence

---

[40] *Deever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).

[41] *State v. Peterman*, No. 90120, 2004 WL 1878301, at *6 (Kan. Ct. App. Dec. 15, 2004).

[42] *Id.* at *7.

[43] *State v. Peterman*, 2004 WL 1878301, at *8.

[44] *State v. Peterman*, 118 P.3d at 1270.

[45] *Id.*

12

for the conviction of solicitation to commit rape.  Since this claim was not presented to the state courts for review, a federal habeas court would ordinarily be prohibited from considering it on the merits.[46]  Nevertheless, if petitioner would be procedurally barred from now asserting this claim in the state courts based on independent and adequate state grounds, his claim may be considered procedurally defaulted, and therefore exhausted, for habeas purposes.[47]  Under those circumstances, the federal habeas court will only consider petitioner's claim if petitioner can demonstrate "cause and prejudice or a fundamental miscarriage of justice."[48]  There is nothing in the record that shows petitioner has presented a motion for review under K.S.A. § 60-1507(c), or that petitioner was precluded from raising this claim in his direct appeal.  Thus, the Court is unable to determine from the record whether petitioner's claim is procedurally defaulted.  In any event, petitioner has neither alleged nor established cause for the default and resulting prejudice or a fundamental miscarriage of justice.  Accordingly, the Court agrees with the State that this claim is barred from federal habeas review.

Even if the Court were to consider the sufficiency of the evidence claim, however, it would fail on the merits.   As previously discussed, this Court must look to see whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[49]  Under Kansas law, criminal solicitation is defined as,

> commanding, encouraging or requesting another person to commit a felony, attempt to commit a felony or aid and abet in the

---

[46]*Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

[47]*Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000).

[48]*English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998).

[49]*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

>commission or attempted commission of a felony for the purpose of promoting or facilitating the felony.[50]

In *State v. Webber*,[51] the Kansas Supreme Court explained further,

>Solicitation is a specific intent crime under Kansas law. A person is not guilty of solicitation unless he or she intentionally commits the actus reus of the offense, *viz.,* he or she commands, encourages, or requests another person to commit a felony with the specific intent that the other commit the crime he or she solicited. The actus reus of the solicitation occurs under Kansas law if a person by words or actions invites, requests, commands, or encourages a second person to commit a crime. The crime is complete when the person communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target needs to be performed by either person.[52]

In this case, the underlying felony was rape. K.S.A. § 21-3502(a)(2) defines rape as "sexual intercourse with a child who is under 14 years of age."[53]

The record shows that on multiple occasions, petitioner expressed to Davis a desire for her to supply him with young girls under the age of twelve with whom he could have sex. He made his first request at the club not long after he met Davis. As incentive to gain her assistance, he told her they could take pictures and make a lot of money on the internet.[54] Two weeks later he called her and asked if she could help him find a little girl tonight. Davis told petitioner that she had a ten-year-old girl with her, but that she was having a birthday party.

---

[50]K.S.A. § 21-3303(a).

[51]918 P.2d 609 (Kan. 1996), *cert. denied*, 519 U.S. 1090 (1997).

[52]*Id.* at 623.

[53]K.S.A. § 21-3502(a)(2).

[54](Tr. of Trial Proceedings at 26 ln. 17.)

14

Petitioner proposed that they take pictures of them having sex with the girl and described his plan to give the girl a sedative, then penetrate and have intercourse with her. This evidence is more than sufficient to justify a rational jury in finding that petitioner (1) specifically intended to solicit Davis's help in obtaining young girls for the purpose of sexual intercourse, and (2) acted upon that intent when he spoke with Davis. This Court finds that a rational trier of fact could have found the essential elements of solicitation to commit rape beyond a reasonable doubt. Petitioner's request for habeas relief is denied as to this issue.

### C.   Illegal Search and Seizure in Violation of the Fourth Amendment

Finally, petitioner claims that the warrantless search of his truck and briefcase violated the Due Process Clause of the Fourth Amendment. In *Stone v. Powell*,[55] the United States Supreme Court addressed the "question whether state prisoners who have been afforded the opportunity for full and fair consideration of their reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review may invoke their claim again on federal habeas corpus review." The court concluded,

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.[56]

Petitioner received a "full and fair" opportunity to litigate this issue in state court. After an

---

[55] 428 U.S. 465, 489 (1976).

[56] *Id.* at 494-95.

15

evidentiary hearing, the District Court found there was probable cause for the search and denied Petitioner's motion to suppress.[57] On appeal, the Court of Appeals found there was probable cause for the search under the automobile exception.[58] Although the Kansas Supreme Court did not address this claim, petitioner's state court remedies have been fully exhausted. Accordingly, under *Stone v. Powell*, this claim provides no basis for federal habeas relief.

**IT IS THEREFORE ORDERED BY THE COURT** that petitioner's request for federal habeas relief under 28 U.S.C. § 2254 (Doc. 1) is DENIED.

**IT IS SO ORDERED.**

Dated this 24th day of October 2007.

 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[57] *State v. Peterman*, No. 90120, 2004 WL 1878301, at *7 (Kan. Ct. App. Dec. 15, 2004).

[58] *Id.*